IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANEITH GLENN-DAVIS, | No. C 02-2257 SI |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR FRONT PAY AWARD** |
| v. | |
| CITY OF OAKLAND, | |
| Defendant. | |

Presently pending before the Court is plaintiff's motion for a front pay award. As set forth below, the Court concludes that a three year front pay award is appropriate, and accordingly GRANTS in part plaintiff's motion and awards $69,833.

**DISCUSSION**

**1.  Entitlement to front pay**

In February 2006, the jury returned a verdict finding that plaintiff was unlawfully denied a promotion to captain in January 2002. The jury awarded back pay to February 2006, and general damages. The Court granted defendant's motion for remittitur, and reduced the jury's award to $400,000. Plaintiff now seeks an award of front pay from March 2006 through her retirement in 2016.

Title VII of the Civil Rights Act of 1964 permits courts to grant equitable remedies to employees who have been impermissibly discriminated against by employers with fifteen or more employees. *See* 42 U.S.C. § 2000e-5(g) (1994). The relevant remedies include reinstatement and awards of backpay and front pay. "Front pay is the term used to describe damages paid as [prospective] compensation for training or relocating to another position. An award of front pay is made in lieu of

reinstatement when the antagonism between employer and employee is so great that reinstatement is not appropriate." *Fadhl v. City and County of San Francisco*, 741 F.2d 1163, 1167 (9th Cir. 1984), *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Defendant contends that front pay is inappropriate because plaintiff has not shown that reinstatement is infeasible. At the hearing on this matter, it was apparent that plaintiff has no desire to return to the Department, and that she plans to continue working at her current job until retirement. However, the Department has made no offer to reinstate plaintiff, and there was some suggestion that there is no open position into which plaintiff could be reinstated. The Court finds that reinstatement does not appear to be a realistic possibility, and thus that front pay is not precluded.

Defendant also argues that plaintiff should not receive front pay because she did not allege constructive discharge, and instead voluntarily resigned from her position. Neither party cites any authority that is directly on point. Both parties cite *Thorne v. City of El Segundo*, 802 F.2d 1131 (9th Cir. 1986), which held that while the doctrine of constructive discharge may limit backpay awards in a failure to promote case, it did not limit backpay awards in a failure to hire case. *See also Odima v. Westin Tuscon Hotel*, 53 F.3d 1484, 1495-96 (9th Cir. 1995) (*discussing Thorne* with approval). In *Thorne*, a plaintiff who worked as a clerk-typist in a police department unsuccessfully applied for a position as a police officer. The district court awarded backpay from the date of the discriminatory failure to hire only through the date the plaintiff quit. The Ninth Circuit held that the district court erred by ending the backpay award at the date the plaintiff quit:

> The district court concluded that Thorne's backpay award could not extend beyond the November 8, 1978 resignation date, because the court found that Thorne voluntarily resigned from her position. The court applied precedents that prohibit an employee, who has been denied discriminatorily an opportunity for promotion, from collecting backpay for periods beyond that employee's voluntary resignation, unless the employee demonstrates that she was constructively discharged by the employer. *See Satterwhite v. Smith*, 744 F.2d 1380, 1381 n. 1 (9th Cir. 1984); *Heagney v. University of Washington*, 642 F.2d 1157, 1166 (9th Cir. 1981); *Muller v. United States Steel Corp.*, 509 F.2d 923, 930 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The court was wrong in doing so.
>
> The discriminatory refusal to offer Thorne a position as a member of the police force constituted a refusal to hire, and therefore the doctrine of constructive discharge is inapplicable. Thus, to the extent that the district court concluded that Thorne was rejected for a promotion this finding was clearly erroneous. The facts are simply otherwise. Thorne was preparing to enter an entirely different career, in competition with other applicants outside the police department who also wished to become police

2

> officers. The mere fortuity that Thorne had a preexisting employment relationship with the employer who was then hiring police officers does not bring her case within the scope of promotion or demotion cases that apply the doctrine of constructive discharge.

*Id*. at 1134 (some citations and quotations omitted). While *Thorne* appears to support defendant's position that plaintiff is unable to obtain front pay because she did not allege constructive discharge in connection with her promotion claim, the *Thorne* court also stated, "[b]ecause the termination date for backpay awards in Title VII cases is peculiarly dependent upon each case's unique facts . . . even in cases involving an employer's refusal to promote, courts do not apply the backpay limitation rotely." *Id*. at 1136 n.4. The *Thorne* court cited approvingly several failure-to-promote cases in which courts awarded backpay past the date of employees' resignations where the resignations were causally related to the discriminatory failures to promote.

Here, although plaintiff did not contend that she was constructively discharged, her uncontradicted testimony at trial was that she left the Department because she was not promoted. Thus, there is a causal relationship between the discriminatory act and plaintiff's resignation. In light of *Thorne*'s instruction that equitable relief awards are "peculiarly dependent upon each case's unique facts," and *Thorne*'s apparent approval of awarding backpay past the date of a voluntary resignation if there is a causal connection between the discrimination and the resignation, the Court finds there is no bar to a front pay award in this case.

### 2. Calculation of front pay

A front pay award is intended to fulfill Title VII's "central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Halifax Local No. 425, United Papermakers and Paperworkers*, 422 U.S. 405, 421 (1975). The plaintiff bears the initial burden of providing the district court "with the essential data necessary to calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995) (internal citation and quotations omitted). "The defendant remains free to challenge the award's amount, length, or interest rate, or to establish as an affirmative defense that the plaintiff failed to mitigate damages." *Id*.

at 1279-80.

Plaintiff seeks front pay of between approximately $800,000 and $1.3 million from February 2006 through her retirement age of 54 in 2016. This figure is based on plaintiff's projections of the salary differential between the Oakland Police Department captain's position and her current position as Chief of Police at Cal-State Hayward, as well as the difference in retirement benefits for the two positions. Plaintiff has submitted evidence that in 2002, when plaintiff left the Oakland Police Department, a captain participating in PERS made $115,515. The captain's salary has risen annually since, and is now $141,746.14. Plaintiff started as Chief of Police, Cal-State Hayward in October 2002 at a salary of $113,000. Effective July 1, 2005, plaintiff's salary increased to $118,656, and in July 2006 her pay was increased to $123,408 per year. Plaintiff has filed a spreadsheet calculating her future losses of salary and retirement benefits, discounted to net present value. *See generally* Reply Polin Decl. (revised calculations). Plaintiff has not made any adjustments for taxation, but requests that the Court appoint an expert to do so; plaintiff argues that she will suffer greater tax consequences as a result of receiving front pay as one lump sum as opposed to as part of her monthly salary.

Plaintiff has also submitted a declaration stating that when she worked at the Oakland Police Department, it was her intention to continue her career with the Department, and that she had a career goal of becoming a Deputy Chief within the Department. *See* Glenn-Davis Decl. ¶ 2. Plaintiff also states that as a peace officer and member of the CalPERS retirement system, she will maximize her retirement benefits after she reaches 30 years of service. *Id*. ¶ 10. Plaintiff states that she will have accumulated 30 years of service in August 2015, and that she anticipates that she will retire at that time or shortly thereafter. *Id*.[1]

Defendant argues that front pay is not warranted because plaintiff promptly found comparable employment. However, the fact that plaintiff quickly found other employment shows that she mitigated her damages, and if anything, is relevant to the calculation of a front pay award. Defendant also contends that the lengthy front pay award sought by plaintiff runs counter to the general rule that front pay is intended to be temporary. The Ninth Circuit has noted, in the context of discussing a plaintiff's

---

[1] Plaintiff's front pay projections are based on retirement in 2016 at the age of 53. *See* Polin Reply Decl. Sheet 1 Page 1.

4

duty to mitigate damages, that "front pay is intended to be temporary in nature." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987); *see also Boehm v. American Broadcasting Co., Inc.*, 929 F.2d 482, 488 (9th Cir. 1991) (noting that 6 year front pay period "is longer than customary in federal discrimination actions, [but] it is not so unsound as to warrant reversal"). In addition, courts have noted that "[t]he longer a proposed front pay period, the more speculative the damages become." *Peyton v. DiMario*, 287 F.3d 1121, 1128 (D.C. Cir. 2002) (internal citation and quotation omitted).

The Court agrees with defendant that plaintiff is not entitled to front pay until retirement because such an award would constitute a windfall. Plaintiff's reliance on *Gotthardt v. National Railroad Passenger Corporation*, 191 F.3d 1148 (9th Cir. 1999), is misplaced. In *Gotthardt*, the Ninth Circuit found that a district court did not abuse its discretion in awarding 11 years of front pay to a 59 year old employee who was close to retirement and unable to enter the workforce as a result of the defendant's conduct. The court held,

> Although an eleven-year front pay award seems generous, the district court explicitly found that Gotthardt would be unable to work in the future, taking into account her age (59), her educational and vocational background, and, especially, her health. Dr. Rivoire's testimony supported the court's finding that Gotthardt's medical condition would render her unable to return to work. The district court did not commit clear error in crediting that testimony and finding that eleven years of front pay was required to make Gotthardt whole.

*Id.* at 1157. Here, in contrast, plaintiff is 43, and she found relatively comparable work immediately upon leaving the Oakland Police Department. *See also Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 923 (6th Cir. 1984) ("For example, the award of front pay to a discriminatorily discharged 41 year old employee until such time as he qualifies for a pension might be unwarranted. On the other hand, the failure to make such an award for an employee age 63, likewise discriminatorily discharged, might be an abuse of discretion.").[2]

The Court finds that it is appropriate to award three years of front pay from February 2006 to February 2009. Between the jury's award of backpay and this Court's front pay award, plaintiff will

---

[2] The Court also notes that the facts of *Gotthardt* were extreme; there the district court explicitly found that the defendant's hostile work environment caused Gotthardt's post-traumatic stress disorder. Here, in contrast, the jury found that defendant discriminated against plaintiff with respect to a discrete employment decision, and there is no suggestion that defendant's actions adversely affected plaintiff's ability to work once plaintiff left the OPD.

5

receive approximately six and a half years of post-resignation compensation addressed at remedying the discriminatory denial of the promotion. The Court finds that such an award meets the "make whole" goal of Title VII. The Court further finds that a three year front pay award is justified considering the plaintiff's young age at the time of the promotion denial and the fact that she immediately found comparable employment. Plaintiff has supplied the Court with information on the salaries and benefits for her current position and the OPD captain's job through the present, and the Court need only project those salaries for an additional 21 months, thus minimizing the need to speculate in calculating the front pay award. The Court finds that a front pay award in excess of three years would be unduly speculative because, *inter alia*, defendant has submitted evidence showing that there is no past pattern or future guarantee of salary increases for the position of OPD Captain, and that as of the time the motions were filed and briefed the OPD was without an operating MOU, negotiations were at an impasse, and the parties were proceeding to arbitration. *See generally* Meyers Decl.

Based upon the parties' information, the Court awards $69,833. This amount reflects the actual salary differential between the positions from March 2006 through June 2007 ($36,672), and the projected differential from July 2007 through February 2009, discounted to net present value ($33,161).

With respect to the March 2006-June 2007 amount, the Court used the plaintiff's current salary through June 2007 because plaintiff's raises at CSU have historically taken effect on July 1. *See* Glenn-Davis Decl. ¶ 7. The Court used the monthly CSU salary, adjusted downward by 5% to account for the 5% contribution that plaintiff pays toward her retirement, for a monthly total of $9,770; plaintiff states, and defendant does not dispute, that OPD pays the entire retirement contribution. With respect to the OPD salary, the Court used the unadjusted salary of $141,744 (monthly of $11,812). The Court did not adjust the current OPD salary upwards by 5% as requested by plaintiff to account for payment of overtime because defendant states that captains have not received an overtime adjustment since 2001. *See* Meyers Decl. ¶ 4.

To calculate the salary differential from July 2007 through February 2009, the Court assumed that plaintiff would receive salary increases at CSU similar to previous raises, at a rate of 2.2%. *See* Glenn-Davis Decl; Supplemental Polin Decl. Thus, for July 1, 2007 through June 30, 2008, plaintiff's salary is expected to be $126,130; once adjusted downward 5% for the CalPERS contribution, the 2007

6

1  salary is $119,824. Plaintiff's 2008 salary is expected to be $128,905; once adjusted downward for the
2  5% CalPERs contribution, the 2008 salary is $122,460, or $10,205 per month. Between July 1, 2007
3  through February 2009, plaintiff is expected to earn a total CalPERS-adjusted salary of $201,464
4  ($119,824 plus 8 months of $10,205). During this same time period, an OPD captain is expected to earn
5  $236,242. This amount does not include any projected salary increases because the Meyers declaration
6  states that salary negotiations were at an impasse, that no salary increases were expected anytime in the
7  near future, and that Oakland captains' salaries were already significantly higher than other police
8  department captains' salaries in other districts. *See generally* Meyers Decl. The salary differential is
9  $34,778, which adjusted for net present value (by applying a discount rate of 4.65%), equals $33,161.

Plaintiff requests that the Court exercise its discretion and compensate plaintiff for the loss of retirement benefits that she will suffer for the rest of her life after retirement. Plaintiff has submitted evidence that the CSU retirement benefits are less generous than the OPD retirement benefits. However, because the Court limits the front pay award to three years, a period which will expire before plaintiff reaches retirement, the Court exercises its discretion and declines to award any retirement benefits as part of the front pay award.

Plaintiff also requests that the Court appoint an expert economist to calculate the tax losses that plaintiff will suffer as a result of receiving one lump sum rather than if plaintiff had received the front pay as part of her salary as a captain. Plaintiff has not cited any Ninth Circuit authority for the proposition that she is entitled to such an adjustment, and the Court, in its discretion, declines to do so.

**CONCLUSION**

For the foregoing reasons and good cause shown, the Court GRANTS in part plaintiff's motion for an award of front pay. (Docket No. 155). Defendant's motion to strike the Polin declarations is DENIED. (Docket No. 162).

**IT IS SO ORDERED.**

Dated: February 12, 2008

*Susan Illston*
SUSAN ILLSTON
United States District Judge

7